# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: SUBPOENA TO HUAWEI TECHNOLOGIES CO., LTD. | ) ) ) ) ) ) | No. 10 C 1975<br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

This case arises from SynQor, Inc.'s ("SynQor") non-party subpoena to Huawei Technologies, Co., Ltd. ("Huawei"), a Chinese corporation. The subpoena was served on an employee of Futurewei Technologies, Inc. ("Futurewei"), Huawei's United States-based subsidiary, at Futurewei's Rolling Meadows, Illinois office on June 4, 2009. In the subpoena, SynQor sought discovery related to a patent-infringement suit, entitled *SynQor, Inc. v. Artesyn Techs., Inc., et al.*, No. 07 C 497 (E.D. Tex.) (the "Texas action"), that is pending in the United States District Court for the Eastern District of Texas. While neither Huawei nor Futurewei is a party to the Texas action, SynQor believes that Huawei purchased certain patent-infringing bus converters and point-of-load converters from Artesyn Technologies, Inc., the defendant to the Texas action.

Futurewei, through counsel, refused to produce the requested discovery, contending that the subpoena was not properly served on Huawei, the parent corporation to which the subpoena was directed. On March 30, 2010, SynQor filed the instant case as a motion to compel a response to the subpoena.

### I. ANALYSIS

In its motion, SynQor contends: (1) that it properly served Huawei with the subpoena, either by serving Huawei directly or by serving Futurewei as agent for

Huawei; or, alternatively, (2) that it properly served Futurewei and that Futurewei has sufficient control over the requested documents to produce them,[1] and (3) that regardless of which entity was properly served, that entity should be compelled to produce a witness pursuant to Federal Rule of Civil Procedure 30(b)(6). Futurewei has appeared in response to the motion to compel,[2] and responds that it: (1) is not Huawei's agent for service of process (and that, as a consequence, Huawei has not been properly served); (2) was not properly served in its own capacity; (3) does not have control of the requested documents; and (4) cannot produce a witness as demanded by the subpoena. The court addresses each of the parties' arguments in turn.[3]

**A.      Service**

Federal Rule of Civil Procedure 45, which governs subpoenas, "requires delivering a copy to the named person . . . ." Fed. R. Civ. P 45(b)(1). The rule does not define "person," and specifically does not describe how to serve a corporate "person" with a subpoena. To resolve this problem, the parties have applied Federal Rule of Civil Procedure 4, which pertains to the service of a summons and contains a specific provision regarding service upon corporations. *See id.* 4(h)(1). While the Seventh Circuit has not

---

[1] The subpoena was directed to: "Huawei Technologies Co., Ltd. 3601 Algonquin Road Rolling Meadows, IL 60008." (*See* Declaration of Stephanie P. Koh in Support of SynQor, Inc.'s Motion to Compel Huawei Technologies Co., Ltd's Response to Subpoena, Exhibit ("Mot. Ex.") 1.)

[2] Correspondence between the parties provided to the court suggests that the dispute has proceeded entirely between SynQor and Futurewei, on which the subpoena was served. In any case, Huawei has not appeared in this action.

[3] In the aforementioned correspondence provided to the court, Futurewei's counsel asserted that it had not been properly served with the motion to compel which initiated this case (which is a separate issue from service of the underlying subpoena, discussed further within). However, Futurewei did not raise this issue in its brief. As the Seventh Circuit has stated, "It is axiomatic that a party waives a defense of insufficiency of process by failing to assert it seasonably in a motion or his first responsive pleading." *S.E.C. v. Cherif*, 933 F.2d 403, 416 (7th Cir. 1991). This case, in which the initial document filed is a motion, differs somewhat from the traditional case, since a responsive pleading is not required; in any case, Futurewei has waived any objections to service of the instant motion by not raising them.

ruled on the issue, district courts in other circuits, like the parties in this case, have "fill[ed] th[e] gap" in Rule 45 by reference to Rule 4. *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 293, 305-06 (S.D.N.Y. 2009) (collecting cases). The court follows these district courts in adopting this approach, which appears to be a reasonable fix to the gap left in Rule 45.

Federal Rule of Civil Procedure 4(h) requires that service on a corporation be accomplished:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and–if the agent is one authorized by statute and the statute so requires–by also mailing a copy of each to the defendant . . . .

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1), referenced in Rule 4(h), allows service on an individual by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . .

*Id.* 4(e). This court is located, and service in this case was made, in Illinois, which allows service on a corporation by, *inter alia*, "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 Ill. Comp. Stat. 5/2-204.

1. Service Directly on Huawei

SynQor first asserts that Huawei was directly served with the subpoena. SynQor points to Huawei's website, in which Huawei represented that it has established branch offices in the United States, including its Rolling Meadows office. Futurewei responds that it owned the office in question, such that service on an employee at that office would

be service on Futurewei, not Huawei. SynQor argues in reply that Huawei's representation on its website gave Futurewei apparent authority to accept service on Huawei's behalf. As the cases SynQor cites make clear, apparent authority is an agency principle. *See Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993). Consequently, Huawei's online representation that it had an office in Rolling Meadows, at most, is relevant to the question of whether SynQor properly served Huawei's agent at that office. Accordingly, SynQor's initial argument that Huawei was directly served is meritless.

      2.     Service on Futurewei as Agent for Huawei

SynQor next argues that even if the subpoena was served on Futurewei, and not on Huawei, Futurewei was Huawei's agent for service of process. If Futurewei was Huawei's agent for service of process, Illinois law would allow service upon it. *See* 735 Ill. Comp. Stat. 5/2-204; *see also* Fed. R. Civ. P. 4(e)(1) (allowing service in any manner permitted under state law). The party seeking to effectuate service bears the burden of establishing the agency relationship. *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 583-84 (N.D. Ill. 1998) (Gettleman, J.) (citing *Akari Imeji Co. v. Qume Corp.*, 748 F. Supp. 588, 591 (N.D. Ill. 1990) (Norgle, J.) (citing Illinois law)).

      According to an Illinois appellate court:

> It is clear under Illinois law that "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the others."

*Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E.2d 1045, 1054 (Ill. App. Ct. 1986) (quoting *Rymal v. Ulbeco, Inc.*, 338 N.E.2d 209, 213 (Ill. App. Ct. 1975)). Illinois courts have considered a number of factors in determining whether a parent "so controls"

4

its subsidiary that two entities become one for purposes of service of process. *See Chung*, 990 F. Supp. at 583-84 (summarizing factors considered by Illinois courts). While "there is no bright-line test for determining how much control a foreign parent corporation must have over its domestic subsidiary before the subsidiary will be deemed its agent for purposes of service of process under Illinois law," the subsidiary-parent relationship is insufficient, standing alone, to create the requisite agency relationship. *Id.* at 584; *see also Wissmiller v. Lincoln Trail Motorsports, Inc.*, 552 N.E.2d 295, 298 (Ill. App. Ct. 1990). Rather, in determining whether a subsidiary is its parent's agent for purposes of service of process, Illinois courts have considered whether:

    (1)    the subsidiary was established and wholly owned by the parent;
    (2)    the parent paid the salaries of the subsidiary's directors;
    (3)    the parent guaranteed the subsidiary's lease;
    (4)    the subsidiary's sole business was the sale of parts for the parent;
    (5)    the parent listed the subsidiary's address in advertisements;
    (6)    the subsidiary existed primarily to promote the sale and distribution of the parent's products;
    (7)    the subsidiary was obligated to repair and sell parts for the parent's products;
    (8)    the subsidiary was contractually required to apprise the parent of all aspects of its business;
    (9)    the subsidiary was authorized to prosecute trademark infringement suits in the parent's name;
    (10)    the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering;
    (11)    the parent dominated the subsidiary's board of directors;
    (12)    the subsidiary conducted its board meetings in the domicile of the parent; and
    (13)    the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.

*Chung*, 990 F. Supp. at 584. Other courts in this district have cited *Chung* and the factors listed therein to engage in the same analysis. *See, e.g.*, *Fed. Equip. Corp. v. Puma Indus. Co.*, 182 F.R.D. 565, 567-68 (N.D. Ill. 1998) (Alesia, J.); *see also Erie Foods Int'l v.*

*Apollo Group & Apollo USA, Inc.*, No. 04 C 6610, 2006 WL 932344, at *3 (N.D. Ill. Apr. 10, 2006) (Coar, J.).

Applying the *Chung* factors to the case at bar, SynQor argues that "at least *Chung* factors 1, 5, 6, 7 and 13 lead to the conclusion that [Futurewei] is Huawei's agent for purposes of service of process."[4] (Mot. 7.) As SynQor maintains, and as Futurewei's objections to the subpoena make clear, Futurewei was formed by and is a wholly owned subsidiary of Huawei, satisfying the first *Chung* factor. Regarding the fifth factor, Huawei used Futurewei's various addresses, including the specific Rolling Meadows address at issue here, in its marketing efforts. Multiple press releases refer to Huawei's office in Plano, Texas, which is in fact Futurewei's office. Moreover, on its website, Huawei refers to several offices (all of which are, in fact, Futurewei's) at which "Huawei North America" can be contacted.

Turning to the sixth *Chung* factor, press releases pertaining to Huawei's establishment of Futurewei suggest that Futurewei's purpose was, at least in part, to promote the sale and distribution of Huawei's products. These press releases reveal that Huawei represented to the public that it had a growing presence in North America and that it served its customers through North American offices which, as noted above, were Futurewei's. Moreover, SynQor has produced evidence that the entry of Futurewei's web site into a web browser automatically redirects the user to a site for "Huawei North America." This evidence suggests that Huawei advertises without distinction between

---

[4] SynQor continues, "It is also likely that factors 8 and 10 weigh in favor of finding that [Futurewei] is Huawei's agent." (Mot. 7.) As its qualifier "likely" suggests, SynQor has no evidence that the eighth and tenth factors weigh in its favor. The court notes SynQor's argument that, in bringing the instant motion, it had access only to publicly available information. However, as noted above, SynQor bears the burden of proving that the requisite relationship exists, and so the court will not credit arguments advanced by SynQor that are unsupported by evidence.

itself and Futurewei but also suggests that Futurewei does not deal exclusively in Huawei's products. (*See* Mot. Ex. 11 ("... FutureWei is dedicated to the research and development, sales and marketing and customer services for its owned [*sic*] branded and Huawei branded network equipment and solutions.").)

Regarding the seventh *Chung* factor, SynQor presents no evidence that Futurewei was obligated to repair and sell parts for Huawei's products. While the available evidence *suggests* that Futurewei may have been so obligated, or may have repaired and sold such parts as a matter of course, there is no evidence establishing as much. Finally, regarding the thirteenth factor, SynQor presents evidence that Huawei produced one annual report with an income statement encompassing the earnings of Huawei and its subsidiaries. The financial statement makes clear that it states the earnings of both "Huawei Technologies Corporation and Subsidiary Companies," *see* Mot. Ex. 21, at 27, but makes no distinction between the earnings of Huawei and those of its subsidiaries.[5]

The evidence presented by SynQor satisfies four of the thirteen *Chung* factors, and reveals a close relationship between Huawei and Futurewei. However, while SynQor need not establish a definite number of the *Chung* factors to prevail on the instant motion, it has failed to satisfy its burden here. Another court in this district has observed that,

---

[5] Futurewei disputes the applicability of several *Chung* factors to the case at bar, relying on the affidavit of its Senior Vice President of Marketing. However, several paragraphs in the affidavit are barely more than a rote recitation of the *Chung* factors, and the affidavit is bereft of specific facts that would support the conclusory assertions contained therein. *Compare* Resp. Ex. B ¶¶ 4-6 *with Chung*, 990 F. Supp. at 584. Moreover, the affidavit contains no reference to any documentary evidence that would support its rote averments. The Seventh Circuit has warned that, in the summary judgment context, "selfserving affidavits, if not supported by the record," are insufficient. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997). Here, the court finds the affidavit's above-cited averments unsupported, conclusory, and therefore unpersuasive.

SynQor, in reply, recites the *Chung* factors left unaddressed by Futurewei's response. SynQor is correct that Futurewei did not discuss several *Chung* factors. However, this argument erroneously assumes that Futurewei, not SynQor, bears the burden on the instant motion.

while Illinois courts have analyzed a variety of factors in determining the sufficiency of parent-subsidiary relationships in the context of service of process, "[A] guiding principle underlying the factors in these cases . . . appears to be the issue of control." *See Akari Imeji*, 748 F. Supp. at 591-92. The *Schlunk* court focused on the same issue, stating that a subsidiary may be its parent's agent for service of process when the parent "so controls the affairs of [the subsidiary] that the two entities are essentially one," or when the subsidiary "exercises no free will of its own in . . . any . . . aspect of its relationship with" its parent. *Schlunk*, 503 N.E.2d at 1054 (citation and internal quotation marks omitted).

SynQor has failed to produce evidence of such control here. Placed in the context of the more specific *Chung* factors, SynQor has not established that Huawei controlled Futurewei's operations, whether by obligating Futurewei to keep it apprised of its business, by dominating Futurewei's board of directors or officers, or by requiring Futurewei to deal only in Huawei products. Nor does the evidence indicate whether Huawei undertook financial obligations on behalf of Futurewei, such as by paying Futurewei's officers' or employees' salaries, or by guaranteeing Futurewei's contracts with third parties. Without evidence of such control, the court cannot conclude that Huawei and Futurewei have a sufficiently close relationship that service on the latter was effective on the former.[6]

---

[6] Two other cases that SynQor cites but does not discuss do not alter the court's conclusion. In *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183, 186 (7th Cir. 1968), the Seventh Circuit found that service on the subsidiary was effective on the parent because the parent that "did not observe even the form of corporate separation," a circumstance not present in this case. In *Maunder v. DeHavilland Aircraft of Canada., Ltd.*, 466 N.E.2d 217, 219, 223 (Ill. 1984), the court found that service on the subsidiary was effective on the parent, noting that the parent controlled the subsidiary in several ways, such as by paying the subsidiary's directors' salaries and guaranteeing the subsidiary's lease. As stated above, the evidence before the court does not allow for a finding that Huawei exercised a similar degree of control over Futurewei.

SynQor argues that Futurewei is nevertheless Huawei's agent for service of process by virtue of Futurewei's apparent authority to act on Huawei's behalf.[7] However, the authority that SynQor submits in support of this argument, *Gilbert*, 622 N.E.2d at 795, discusses the scope of apparent authority as the basis for liability. SynQor points to no Illinois precedent applying the doctrine of apparent authority as a basis for service of process on a subsidiary and, based on the multi-factor analysis that is appropriate under Illinois law, apparent authority is an insufficient basis, standing alone, for service of process on a subsidiary to be effective on the parent.

Based on the available record, the court cannot conclude that Futurewei was Huawei's agent for service of process.

3. Service on Futurewei

SynQor argues that even if the subpoena was served on Futurewei only in its own capacity, Futurewei must respond to the subpoena. To prevail on this argument, Futurewei must have been properly served with the subpoena,[8] and the documents and witnesses requested must be within Futurewei's "possession, custody, or control." *See* Fed. R. Civ. P. 45(a)(1)(A). SynQor bears the burden of establishing Futurewei's control over the documents at issue. *See Sparks Tune-Up Ctrs., Inc. v. Panchevre*, No. 90 C 4369, 1991 WL 101667, at *3 (N.D. Ill. June 4, 1991) (citing *Norman v. Young*, 422 F.2d 470, 473 (10th Cir. 1970)).

---

[7] SynQor raises this argument for the first time in reply. While arguments in support of a motion are generally waived if not raised in the initial motion, the court allowed Futurewei to file a sur-reply in opposition to SynQor's motion.

[8] The subpoena was directed to Huawei, not Futurewei, as discussed at page 13 within.

9

The first question is whether Futurewei was properly served with the subpoena. The subpoena was served on a Futurewei employee named Jie Zhou, from whom Futurewei submits an affidavit as part of its response to SynQor's motion. In her affidavit, Zhou attests that she is not Futurewei's agent for service of process, and it does not appear that she is an officer of Futurewei. However, as stated above, Illinois law allows service on a corporation to be effectuated by serving any agent of the corporation. *See* 735 Ill. Comp. Stat. 5/2-204; *see also* Fed. R. Civ. P. 4(e)(1) (allowing service in any manner permitted under state law). Based on this rule, Illinois courts have held that service on any agent, including a secretary or receptionist, is generally sufficient to serve the corporation. *See, e.g.*, *Megan v. L.B. Foster Co.*, 275 N.E.2d 426, 427-28 (Ill. App. Ct. 1971). Zhou identifies herself as an "Administrator Manager" of Futurewei. (Resp. Ex. C ¶ 2.) Zhou is plainly Futurewei's agent, making service on Futurewei proper.[9]

The second question is whether Futurewei has "possession, custody, or control" over the requested documents. SynQor does not dispute that Futurewei lacks possession or custody over the requested documents, instead insisting that Futurewei has the requisite control. Whether a domestic subsidiary has control over documents in the possession of a foreign parent is a question that courts resolve by examining the "closeness of the relationship between the parties." *See Stella v. LVMG Perfumes & Cosmetics USA, Inc.*, No. 07 C 6509, 2009 WL 780890, at *2 (Mar. 23, 2009) (quoting *Flavel v. Svedala Indus., Inc.*, No. 92 C 1095, 1993 WL 580831, at *4 (E.D. Wis. Dec. 13, 1993)) (internal quotation marks and citation omitted). The subsidiary need only be

---

[9] Because the court concludes that Futurewei was properly served with the subpoena, it need not address SynQor's argument that Futurewei waived the issue of service by not raising it in the objections that Futurewei served on SynQor in response to the subpoena.

able to obtain the documents in question to "control" them, and need not "control" the parent that possesses the documents. *See Wilson v. Sundstrand Corp.*, Nos. 99 C 6944 & 99 C 6946, 2003 WL 21961359, at *9 (N.D. Ill. Aug. 18, 2003); *see also Johnson v. Cloos Int'l, Inc.*, No. 89 C 8483, 1990 WL 106560, at *1 (N.D. Ill. July 11, 1990).[10] However, the Seventh Circuit has warned against an overly expansive reading of the term "control," noting that "the fact that a party could obtain a document if it tried hard enough . . . does not mean that the document is in its possession, custody, or control . . . ." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993).

The parties cite a number of factors considered by courts examining whether a subsidiary and its parent are sufficiently close so that the subsidiary controls the documents in question. According to one district court case, those factors include:

(1) commonality of ownership;
(2) exchange or intermingling of directors;
(3) the exchange of documents in the ordinary course of business;
(4) the non-party's connection to the transaction at issue;
(5) any benefit or involvement by the non-party corporation in the litigation;
(6) a subsidiary's marketing and/or servicing of the parent company's products; and
(7) the financial relationship between the companies.

*See Halliburton Energy Servs., Inc. v. M-I, LLC*, No. 06 C 001, 2006 WL 3085622, at * 1 (S.D. Ohio Oct. 27, 2006) (citing *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986)); *see also Flavel*, 1993 WL 580831, at *4 (also considering whether there is "sufficient control exercised by the foreign parent over the subsidiary's directors,

---

[10] The court notes that several cases cited by the parties interpret the phrase "possession, custody, or control" as stated in Federal Rule of Civil Procedure 34, which pertains to the production of documents and other materials by parties during discovery. *See* Fed. R. Civ. P. 34(a)(1). At issue in this case is Rule 45, which pertains to subpoenas, and employs the same "possession, custody, or control" language. *See id.* 45(a)(1)(A)(iii). Courts have consistently held that Federal Rules of Civil Procedure should be read *in pari materia* with each other. *Yousuf v. Samantar*, 451 F.3d 248, 256 (D.C. Cir. 2006); *see also Hickman v. Taylor*, 329 U.S. 495, 505 (1947). Therefore, the court considers case law interpreting "possession, custody, or control" as stated in Rule 34 along with case law interpreting the identical phrase in Rule 45.

officers, and employees.") (internal quotation marks omitted); *Johnson*, 1990 WL 106560, at *1.

Certain factors clearly weigh in SynQor's favor: Futurewei is wholly owned by Huawei, and the two entities engaged in some joint marketing efforts, as previously mentioned. SynQor asserts that the two entities exchange documents in the ordinary course of business; as SynQor points out, Huawei at least must have collected documents related to Futurewei's earnings to produce the report of Huawei and its subsidiaries' earnings. More specifically to the instant inquiry, however, SynQor has produced no evidence that Huawei gives Futurewei access to *its* documents, and specifically no evidence that Huawei would give Futurewei any access to the documents requested by the subpoena. There is also no evidence that Huawei and Futurewei exchange or intermingle directors, or that Huawei controls Futurewei's directors, officers, or employees. The financial relationship between the parties is unclear, as is Futurewei's relationship to the transactions at issue. SynQor represents that Huawei purchased the converters at issue in the Texas action, Mot. 2, and that "it is believed" that Futurewei sells products incorporating those converters. (Mot. 15.) However, SynQor cites no evidence establishing as much. SynQor has not established Futurewei's relationship to the transactions at issue in the Texas action, and likewise has not established whether Futurewei has been involved in or stands to benefit from the Texas action.

In short, while Futurewei and Huawei appear to have a close relationship, there is no indication that Futurewei has any relationship with the converters at issue in the Texas action, or that it is able to obtain documents related to those converters from Huawei. Therefore, SynQor has failed to meet its burden, and its motion to compel is denied.

**B.    Witness**

Finally, SynQor argues that Futurewei should be required to produce a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) in response to the subpoena.[11] This argument is problematic given that, by the subpoena, SynQor sought the deposition of Huawei, not Futurewei but, in attempting to effectuate service, served Futurewei, not Huawei. Had SynQor succeeded in demonstrating that Huawei and Futurewei were so close or interconnected that one was the agent of the other, or that one controlled the documents of the other, a focus on the name printed on the subpoena might not be necessary. However, the record presently before the court reveals two, separate corporations. Service of a subpoena naming only one corporation is ineffective to compel a response from another. *See* Fed. R. Civ. P. 45(a)(1)(A) (stating that a subpoena must "command *each person to whom it is directed*" (emphasis added)). Futurewei, accordingly, cannot be compelled to respond to this subpoena.

Beyond this obvious problem lies another. The parties agree that Futurewei's principal place of business is not in Illinois but in Plano, Texas–*i.e.*, *in precisely the judicial district in which the Texas action is pending*. The evidence that SynQor submitted in support of its motion to compel makes clear that Futurewei's headquarters are so located, and suggests that SynQor should have known as much before serving the subject subpoena. (*See* Mot. Exs. 11, 14, 15, 17, 19 (all listing headquarters in Texas).) The law is clear that a corporation's principal place of business is presumed to be the appropriate place for its deposition pursuant to Rule 30(b)(6). *See Magnus Elecs., Inc. v. Masco Corp. of Ind.*, 871 F.2d 626, 630 (7th Cir. 1989). The parties also do not appear to

---

[11]    While SynQor raises this argument for the first time on reply, the court, as noted above, allowed Futurewei to file a sur-reply. Therefore, the court will address the argument on its merits.

dispute that any person that Futurewei designates to testify on its behalf should be deposed at Futurewei's headquarters in Plano, a convenient location relative to the Texas action. That being the case, and even assuming there was a good reason for this court to become involved in this dispute, there remains none now.

The motion to compel is therefore denied with respect to the subpoenaed testimony. If SynQor wishes to depose Futurewei, it can do so by subpoenaeing Futurewei in the Eastern District of Texas, before the judge to whom the underlying case is assigned and who has the greatest knowledge of the Texas action.

## II. CONCLUSION

For the reasons stated above, SynQor's motion to compel is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 2, 2010